**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KATHERINE E. TURPIN and OLIVIA
JANE TURPIN,

      Plaintiffs,

v.

                                 Case No. 2:26-cv-00101-MIS-DLM

EAGLEMARK    SAVINGS    BANK,
HARLEY-DAVIDSON CREDIT CORP.,
and HARLEY-DAVIDSON FINANCIAL
SERVICES, INC.,

      Defendants.

## <u>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION</u>

**THIS MATTER** is before the Court on Defendants' Motion to Compel Arbitration, ECF No. 16, and Memorandum of Law in support thereof, ECF No. 16-2, filed February 25, 2026.[1] Plaintiffs Katherine E. Turpin and Olivia Jane Turpin filed a Response on March 9, 2026 ("Response"), ECF No. 21, to which Defendants filed a Reply on March 23, 2026 ("Reply"), ECF No. 26. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Motion.

### I.      Background

On September 25, 2024, Plaintiffs—both residents of New Mexico—executed a Promissory Note and Security Agreement ("Contract") with Defendant Eaglemark Savings Bank ("Eaglemark") for the purchase of a motorcycle. Am. Compl. ¶¶ 4-5, 18, ECF Nos. 7, 14.[2] It

---

[1] The Motion was filed by Defendant Eaglemark Savings Bank only. <u>See</u> ECF No. 16. Defendants Harley-Davidson Financial Services, Inc. and Harley-Davidson Credit Corp. later filed a Notice of Joinder in Eaglemark's Motion. ECF No. 23.

[2] Plaintiffs filed the Amended Complaint under seal, ECF No. 7, and later filed a redacted version on the public record, ECF No. 14.

appears that Plaintiffs purchased the motorcycle from a Harley Davidson dealership in California. See Decl. of Jenifer Ford ("Ford Decl.") ¶ 6, ECF No. 26-1 (stating that Plaintiffs purchased the motorcycle from "Coronado Beach Harley-Davidson Inc."). Eaglemark "is a Nevada-chartered savings bank with its principal place of business in Carson City, Nevada." Am. Compl. ¶ 6; Ford Decl. ¶ 4. Eaglemark is a wholly-owned subsidiary of Defendant Harley-Davidson Credit Corp. ("HDCC"), and HDCC is a wholly-owned subsidiary of Defendant Harley-Davidson Financial Services, Inc. ("HDFS"). Id. ¶ 9; see also Ford Decl. ¶ 4; Eaglemark's Corporate Disclosure Statement, ECF No. 17.

Pursuant to the Contract—which Plaintiffs attached to the Amended Complaint[3]—Eaglemark agreed to finance the purchase of the motorcycle in exchange for, among other promises, Plaintiffs' agreement to make monthly payments. Contract at 1, ECF No. 16-1. The Contract contains the following dispute resolution provision:

> **26. Dispute Resolution and Arbitration.  Agreement to Arbitrate.**
> . . .
>
> **You also agree that, by entering into this Contract, You and We each waive any right to a trial by jury.**
>
> This arbitration provision relates to a transaction (or transactions) involving interstate commerce.  The parties acknowledge and agree that this clause and the Federal Arbitration Act (9 U.S.C. § 1 et seq.) shall govern any and all Claims (defined below) between You (as well as your agents, heirs, and assigns) on the one hand, and [Eaglemark] and/or any of [Eaglemark's] successors, assigns, parents, subsidiaries, or affiliates and/or any employees, officers, directors, agents, of the aforementioned on the other hand.  The parties agree to arbitrate any and all claims, controversies, or disputes including but not limited to those arising out of or relating in any way to Your loan account, this Contract, advertising or claims relating to this Contract, or the sale of this Contract, whether in contract, tort, statute, or otherwise, as well as recovery of any claim under this Contract (collectively "Claims").  Any Claims, including but not limited to the applicability of this arbitration clause, shall

---

[3]    See ECF No. 1 at 15-20.  Defendants also filed a copy of the Contract as an Exhibit to their Motion. ECF No. 16-1 at 2-7.  The Court cites to the copy provided by Defendants because it is slightly easier to read.

> be resolved by neutral binding arbitration on an individual basis without resort to any form of class action or any other collective or representative proceeding before the American Arbitration Association ("AAA" or "Arbitration Forum"). You may obtain a copy of the rules by visiting their website. . . .
>
> The arbitrators shall be attorneys or retired judges selected in accordance with AAA rules. . . .
>
> If any portion of this arbitration provision other than the Class Action Waiver is deemed invalid or unenforceable, the remaining portions of this arbitration provision shall remain valid and in force.

Id. ¶ 26 ("Arbitration Agreement"). The Arbitration Agreement further states that both Parties "retain the right to seek limited provisional remedies from a court (for example, We can seek and obtain a replevin order, or other order supporting repossession of the Vehicle, from a court); the remainder of the matter will then proceed to arbitration." Id. The Arbitration Agreement also contains an "**Opt-out option**" which permits Plaintiffs to opt out of the Arbitration Agreement within sixty days of the date of the Contract. Id.

The Contract also contains a choice-of-law provision that states, in relevant part: "this Contract and Your account will be governed by the laws of the State of Nevada and applicable Federal law." Id. ¶ 22. The Contract also contains a Notice of Assignment clause that states: "Upon receipt and funding of this Contract, some or all of the rights in the Contract will automatically be assigned to [HDCC], pursuant to the Master Assignment Agreement or Participation Agreement in effect between [Eaglemark] and [HDCC]." Id. ¶ 24.

By September 2025, Plaintiffs were approximately 90 days overdue on their loan repayments and Defendants initiated repossession proceedings. Am. Compl. ¶ 24. On September 8, 2025, Plaintiff Katherine Turpin contacted Defendants to arrange a payment plan to cure the delinquency and prevent repossession. Id. ¶ 25. Defendants agreed to accept two payments of $500 each—one immediately on September 8, 2025, and a second on September 18, 2025. Id. ¶

3

26. In exchange, "Defendants agreed to capitalize one missed payment (add it to the end of the loan) and halt repossession proceedings." Id. Plaintiffs made both payments exactly as agreed. Id. ¶ 27. Upon making the payment on September 8, the repossession was stopped. Id. ¶ 28. By September 18, 2025, after making both $500 payments as required by the modified agreement, the loan was brought current. Id. ¶ 29. However, Defendants assessed repossession-related fees totaling approximately $677. Id. ¶ 39.

Despite the loan being current under the modified agreement as of September 18, 2025, Defendants continued to call Plaintiffs daily from September 25, 2025, through October 17, 2025—a period of twenty-three consecutive days. Id. ¶ 30.

On January 20, 2026, Plaintiffs initiated this lawsuit. See ECF No. 1. On February 2, 2026, Plaintiffs filed the operative Amended Complaint under seal, ECF No. 7, and later filed a redacted version on the public record, ECF No. 14. The Amended Complaint asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Counts One and Two), the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to 57-12-26 (Count Three), and for breach of contract (Count Four). Id. ¶¶ 72-95.

On February 25, 2026, Defendants filed the instant Motion to Compel Arbitration, ECF No. 16, and Memorandum in Support thereof [hereafter "Motion"], ECF No. 16-2. Plaintiffs filed a Response, ECF No. 21, to which Defendants filed a Reply, ECF No. 26.

## II.    Legal Standard

Issues of arbitrability are governed by the Federal Arbitration Act ("FAA"). See Belnap v. Iasis Healthcare, 844 F.3d 1272, 1279 (10th Cir. 2017). The purpose of the FAA is to "ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). Congress enacted the FAA to overcome judicial resistance to

4

arbitration and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner.  Vaden v. Discover Bank, 556 U.S. 49, 58 (2009).

The FAA requires a court to stay a lawsuit and to compel arbitration upon a showing that (a) the parties formed an enforceable agreement to arbitrate and (b) the claims before the court fall within the scope of that agreement.  9 U.S.C. §§ 2-4; see also Brayman v. KeyPoint Gov't Sols., Inc., 83 F.4th 823, 832 (10th Cir. 2023); Beltran v. AuPairCare, Inc., 907 F.3d 1240, 1250 (10th Cir. 2018); Soc'y of Pro. Eng'g Emps. in Aerospace v. Spirit Aerosystems, Inc., 681 F. App'x 717, 721 (10th Cir. 2017).

"The first inquiry requires a court determine whether the arbitration agreement should 'be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'"  Beltran, 907 F.3d at 1250-51 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2)).  "'This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' . . . .'"  Id. (quoting Concepcion, 563 U.S. at 339 (quoting Dr.'s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996))).  "The enforceability of the agreement is a matter of state law."  Id.

"Assuming there is a valid contract to arbitrate, 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.'"  Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).  "The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'"  Mitsubishi Motors, 473 U.S. at 626 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

Issues regarding the arbitrability of the plaintiffs' claims may be delegated to the arbitrator.

Belnap, 844 F.3d at 1280 (10th Cir. 2017).

> Given that parties can agree to arbitrate arbitrability, as well as other issues, questions of arbitrability encompass two types of disputes: (1) disputes about "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement," First Options, 514 U.S. at 944–45, 115 S.Ct. 1920; and (2) threshold disputes about "who should have the primary power to decide" whether a dispute is arbitrable, id. at 942, 115 S.Ct. 1920. When addressing the first type of dispute—whether a dispute is arbitrable—"any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25, 103 S.Ct. 927. However, when addressing the second type of dispute—that is, "when courts decide whether a party has agreed that arbitrators should decide arbitrability"—courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." First Options, 514 U.S. at 944, 115 S.Ct. 1920 (alteration in original) (emphasis added) (quoting AT & T Techs., 475 U.S. at 649, 106 S.Ct. 1415); accord Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 964 (10th Cir. 2001), overruled on other grounds by Howsam, 537 U.S. 79, 123 S.Ct. 588.

> Importantly, courts must address the second type of dispute first. In other words, the question of who should decide arbitrability precedes the question of whether a dispute is arbitrable.

Id. at 1280-81. If the moving party invokes a delegation clause, the court must resolve any issues regarding its formation and applicability. Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287, 297 (2010) ("[T]he court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."); Fedor v. United Healthcare, Inc., 976 F.3d 1100, 1106 (10th Cir. 2020). If the parties did not clearly and unmistakably delegate arbitrability issues to the arbitrator, the court decides issues of arbitrability. See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 780 (10th Cir. 1998).

## III.    Discussion

Initially, Defendants argue, and Plaintiffs do not contest, that Nevada and applicable federal law apply to this case pursuant to the Contract's choice-of-law provision. Mot. at 5-6 (citing

6

Contract ¶ 22); see also Resp. at 5 (acknowledging that the "Contract selects" Nevada law).  The Court agrees: pursuant to the Contract's choice-of-law provision, Nevada law and applicable federal law apply here.  See Rodriguez v. Equifax Info. Servs., LLC, Case No.: 3:21-cv-01421-BEN-KSC, 2022 WL 2079710, at *3 (S.D. Cal. June 9, 2022) (finding that Nevada contract law applied to motion to compel arbitration because (1) the plaintiff's contract with Eaglemark contained a choice-of-law provision providing that "the laws of the State of Nevada and applicable Federal law" governed the contract, and (2) the plaintiff failed to address the defendants' argument that Nevada contract law applied).

Next, Defendants argue, and Plaintiffs do not contest, that the FAA applies to the Parties' Arbitration Agreement because it is (1) in writing and (2) contained in a contract evidencing a transaction involving commerce.  Mot. at 8-9.  The Court agrees.  See Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697 (4th Cir. 2012) (holding that the FAA applied to an arbitration agreement in a retail installment sales contract for the purchase of an automobile between a citizen of one state and a financing company in another state because the underlying transaction involved interstate commerce); In re Knepp, 229 B.R. 821, 834 (Bankr. N.D. Ala. Jan. 29, 1999) (finding that if an agreement to arbitrate contained in a contract to purchase an automobile existed it was governed by the FAA because (1) it was in writing and (2) the underlying transaction involved interstate commerce, especially because "the arbitration agreement provides that this transaction involved substantial interstate commerce" and "[w]hen a contract expressly provides that the transaction involves interstate commerce within the meaning of the FAA, a court will and must enforce the stipulation and apply the FAA as to the arbitration agreement contained in the contract"); cf. Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56-58 (2003) (holding that the FAA applied to an arbitration agreement in a debt-restructuring agreement between a commercial

lender and construction company because, <u>inter alia</u>, Congress has the power under the Commerce Clause to regulate commercial lending due to the "broad impact" it has on the national economy).

Defendants further argue that Plaintiffs are required to arbitrate their claims because a valid arbitration agreement exists between the Parties, and Plaintiffs' claims fall within the scope of the Arbitration Agreement.  Mot. at 11.  They argue that the Court need not address either issue because the Parties delegated both issues to the arbitrator.  <u>Id.</u> at 11-14.

Plaintiffs argue that the Court must decide three threshold questions: (1) whether Plaintiffs agreed to arbitrate with HDCC and HDFS, or only Eaglemark, Resp. at 4, 9-10; (2) whether the delegation clause is unconscionable, <u>id.</u> at 4-9; and (3) whether the arbitration clause, assuming it is valid and enforceable, reaches Plaintiffs' statutory claims, <u>id.</u> at 11.[4]

In their Reply, Defendants argue that Plaintiffs agreed to arbitrate with HDCC and HDFS pursuant to the Arbitration Agreement's plain language, Reply at 4-5; that all of Plaintiffs claims plainly fall within the scope of the Arbitration Agreement, <u>id.</u> at 5-6; and that the delegation clause within the Arbitration Agreement is not unconscionable, <u>id.</u> at 6-10.  Finally, Defendants argue that the Court should not decide whether Plaintiffs' claims are arbitrable because the Parties clearly and unmistakably delegated that duty to the arbitrator.  <u>Id.</u> at 10-11.

### a.    Plaintiffs agreed to arbitrate with HDCC and HDFS

First, Plaintiffs argue that they did not form an agreement to arbitrate their claims against HDCC and HDFS because they are not signatories to the Contract.  Resp. at 9.

Nevada law governs whether HDCC and HDFS can enforce the Arbitration Agreement. <u>See</u> <u>Jacks v. CMH Homes, Inc.</u>, 856 F.3d 1301, 1304 (10th Cir. 2017); <u>Belnap</u>, 844 F.3d at 1293.

---

[4]    To the extent Plaintiffs' Response raises other issues and arguments, the Court has considered them and finds that they are immaterial to the Court's disposition and/or meritless.

Under Nevada law, whether a nonsignatory may enforce an arbitration agreement against a signatory is an issue "of contract formation that must be decided by the courts in the first instance." RUAG Ammotec GmbH v. Archon Firearms, Inc., 538 P.3d 428, 433 (Nev. 2023) (citing In re StockX Customer Data Sec. Breach Litig., 19 F.4th 873, 879 (6th Cir. 2021)).

Here, the plain language of the Arbitration Agreement covers Plaintiffs' claims against HDCC and HDFS:

> The parties acknowledge and agree that this clause and the Federal Arbitration Act (9 U.S.C. § 1 et seq.) shall govern any and all Claims (defined below) between You (as well as your agents, heirs, and assigns) on the one hand, and [Eaglemark] and/or any of [Eaglemark's] successors, assigns, parents, subsidiaries, or affiliates and/or any employees, officers, directors, agents, of the aforementioned on the other hand. The parties agree to arbitrate any and all claims, controversies, or disputes including but not limited to those arising out of or relating in any way to Your loan account, this Contract, advertising or claims relating to this Contract, or the sale of this Contract, whether in contract, tort, statute, or otherwise, as well as recovery of any claim under this Contract (collectively "Claims").

Contract ¶ 26 (emphasis added).

The evidence establishes, and Plaintiffs do not contest, that HDCC and HDFS are both parent companies of Eaglemark.  See Ford Decl. ¶ 4, ECF No. 26-1; Eaglemark's Corporate Disclosure Statement, ECF No. 17.  The evidence further establishes that HDCC is an assignee of Eaglemark.  Contract ¶ 24 ("Upon receipt and funding of this Contract, some or all of the rights in the Contract will automatically be assigned to [HDCC], pursuant to the Master Assignment Agreement or Participation Agreement in effect between [Eaglemark] and [HDCC].").  Because Plaintiffs agreed to arbitrate any and all claims with Eaglemark's "parents" and "assigns," and because both HDCC and HDFS are parents of Eaglemark, and because HDCC is also an assignee of Eaglemark, the Court finds that HDCC and HDFS can enforce the Arbitration Agreement against Plaintiffs.  See Rodriguez, 2022 WL 2079710, at *8 (finding that the plaintiff agreed to

arbitrate with HDCC and HDFS because the arbitration agreement explicitly applied to Eaglemark's "successors, assigns, parents, subsidiaries, or affiliates" and the evidence established that HDCC and HDFS were Eaglemark's parent companies, and that HDCC was Eaglemark's assignee); Tallman v. Eighth Jud. Dist. Ct., 359 P.3d 113, 119 (Nev. 2015) (holding that non-signatory defendants could enforce arbitration agreement because it extended to claims against the signatory's "officers, directors, managers, employees or agents").

**b.      The delegation clause is not unconscionable**

Next, Plaintiffs argue that the delegation clause is both procedurally and substantively unconscionable, and the opt-out provision does not cure unconscionability.  Resp. at 5-9.

"Under the FAA, 'arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms.'"  Uber Techs., Inc. v. Royz, 517 P.3d 905, 909 (Nev. 2022) (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 67 (2019)).  "A delegation clause is 'an agreement to arbitrate threshold issues concerning the arbitration agreement . . . such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'"  Id. (quoting Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010)).  "In other words, it is 'simply an additional, antecedent agreement' to arbitrate a gateway issue."  Id. (quoting Schein, 586 U.S. at 68).  "If the parties 'clearly and unmistakably' agree to delegate such threshold questions to an arbitrator, then courts must enforce the delegation clause like any other arbitration provision under the FAA."  Id. (quoting AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)).

Here, Defendants argue, and Plaintiffs do not contest, that "there is unmistakable evidence that Plaintiffs and ESB agreed to submit the question of whether the dispute is subject to arbitration

to the arbitrator." Resp. at 13 (citing Contract ¶ 26). The Court agrees. The delegation clause states:

> Any Claims, including but not limited to the applicability of this arbitration clause, shall be resolved by neutral binding arbitration on an individual basis without resort to any form of class action or any other collective or representative proceeding before the American Arbitration Association ("AAA" or "Arbitration Forum"). You may obtain a copy of the rules by visiting their website.

Contract ¶ 26. The Parties' agreement to arbitrate "the applicability of this arbitration clause" is clear and unmistakable evidence that they agreed to delegate the issue of arbitrability to the arbitrator. See Rodriguez, 2022 WL 2079710, at *7 (finding that the language of a materially identical delegation clause "clearly and unmistakably delegates to the arbitrator questions of arbitrability, because it states that '[a]ny claims, including but not limited to the applicability of this arbitration clause, shall be resolved by binding neutral arbitration'"). The Court further finds that the Parties' incorporation by reference of the AAA rules is clear and unmistakable evidence that the Parties intended to delegate issues of arbitrability to the arbitrator. Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. De C.V., 994 F.3d 1181, 1191 (10th Cir. 2021) ("[W]e have repeatedly held that contracting parties' incorporation of the AAA Rules into their arbitration agreement constitutes 'clear and unmistakable evidence of an agreement to arbitrate arbitrability.'") (quoting Dish Network L.L.C. v. Ray, 900 F.3d 1240, 1246 (10th Cir. 2018)); Rodriguez, 2022 WL 2079710, at *5 (finding that the incorporation of the AAA rules was clear and unmistakable evidence the parties agreed to delegate arbitrability to the arbitrator). Finally, the Court observes that in their Response, Plaintiffs concede that "[t]he delegation provision requires consumers to submit the question of whether their claims are arbitrable to the arbitrator[.]" Resp. at 7.

Under Nevada and federal law, if a delegation clause is severable from an arbitration agreement "and delegates questions regarding the arbitration agreement's validity or application to the arbitrator, the district court may determine whether the delegation clause itself is a valid agreement." Uber Techs., 517 P.3d at 909 (citing Rent-A-Ctr., 561 U.S. at 72). However, the party opposing arbitration must specifically dispute the validity of the delegation clause. Rent-A-Ctr., 561 U.S. at 72 ("[U]nless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); Fedor, 976 F.3d at 1105 ("[I]f a party challenges the validity of an arbitration contract as a whole but fails to specifically challenge a delegation clause therein, then the delegation clause will typically require a court to compel arbitration and allow an arbitrator to determine whether the arbitration contract was indeed valid.").

Here, Plaintiffs purport to specifically challenge the delegation clause as unconscionable. See Resp. at 5-10. "A contract is unconscionable only when the clauses of that contract and the circumstances existing at the time of the execution of the contract are so one-sided as to oppress or unfairly surprise an innocent party." Stremmel Motors, Inc. v. IDS Leasing Corp., 514 P.2d 654, 657 (Nev. 1973). "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." U.S. Home Corp. v. Michael Ballesteros Tr., 415 P.3d 32, 40 (Nev. 2018). "Unconscionability is evaluated on a sliding scale; if one type of unconscionability is greater, the other may be lesser." Tough Turtle Turf, LLC v. Scott, 537 P.3d 883, 886 (Nev. 2023) (citing Burch v. Second Jud. Dist. Ct., 49 P.3d 647, 650 (Nev. 2002)).

### 1. Procedural unconscionability

"A contract clause 'is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an

12

adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract.'" Id. at 885 (quoting D.R. Horton, Inc v. Green, 96 P.3d 1159, 1162 (Nev. 2004)).

Plaintiffs argue that the delegation clause is procedurally unconscionable because it "appears as a single clause within Section 26 of a 6-page pre-printed form contract"; "[i]t is not separately identified, not separately signed, not highlighted, and not called to Plaintiffs' attention"; and "[i]t appears in the same font and format as 31 other numbered provisions covering everything from late charges to vehicle repossession to telephone communications." Resp. at 6. They also appear to argue that the delegation clause is procedurally unconscionable due to the Parties' unequal bargaining power and the fact that it is an adhesion contract. Id.

The Court rejects Plaintiffs' arguments. First, Plaintiffs cite no authority—and the Court has found none—holding that Nevada law requires a delegation provision to be more conspicuous than the rest of the arbitration agreement (or any other contractual provision). In fact, the Supreme Court of Nevada has rejected a similar argument. In U.S. Home Corp., the district court deemed an arbitration agreement (as a whole) to be procedurally unconscionable. 415 P.3d at 41. As relevant here, it found the arbitration agreement to be "fatally inconspicuous because it was written using the same size type as the rest of the CC&Rs, not bolded or capitalized, and it did not 'draw an average homebuyer's attention to the waiver of important legal rights.'" Id. (quoting D.R. Horton, 96 P.3d at 1162). The Supreme Court of Nevada disagreed that the arbitration agreement was fatally inconspicuous simply because it was in the same font as the rest of the contract and held that there is no "conspicuousness" requirement for arbitration clauses. Id. (citing Casarotto, 517 U.S. at 683, 687). "Requiring an arbitration clause to be more conspicuous than other contract provisions is exactly the type of law the Supreme Court has held the FAA preempts because it

13

imposes stricter requirements on arbitration agreements than other contracts generally." Id. (internal citations omitted).

Although Plaintiffs here are challenging the conspicuousness of the delegation provision specifically, rather than the entire Arbitration Agreement as a whole, Plaintiffs have "presented no authority that would require a delegation provision to be more conspicuous than the very arbitration agreement in which it is contained." Flynn v. Bridgecrest Cred. Co., LLC, Case No. 2:25-cv-722-RAH-CWB, 2026 WL 502987, at *5 (M.D. Ala. Feb. 5, 2026). And although the delegation provision is contained within the Arbitration Agreement on page six of a pre-printed form, its effects are "readily ascertainable upon a review of the contract.'" Tough Turtle, 537 P.3d at 885 (quoting D.R. Horton, 96 P.3d at 1162).

The Court further rejects Plaintiffs' argument that the delegation clause is procedurally unconscionable because it is a contract of adhesion and because the Parties had unequal bargaining power. See Resp. at 6. "An adhesion contract is 'a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain.'" Kindred v. Second Jud. Dist. Ct., 996 P.2d 903, 907 (Nev. 2000) (quoting Obstetric & Gynecologists v. Pepper, 693 P.2d 1259, 1260 (Nev. 1985)). However, "the existence of a meaningful right to opt-out of arbitration necessarily renders the arbitration clause (and the delegation clause specifically) procedurally conscionable as a matter of law." Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1210 (9th Cir. 2010) (citation modified) (emphasis added); see also id. at 1211 (holding that delegation provision was not unconscionable because the arbitration agreement contained an opt-out provision, and therefore was not adhesive); Valley Health Sys., LLC v. Alexander, No. 84541, 2023 WL 1453227, at *2 (Nev. 2023) (finding that arbitration agreement was not procedurally unconscionable because it contained a thirty-day

opt out provision).  Here, the Arbitration Agreement's sixty-day opt-out provision precludes a finding that the delegation provision is procedurally unconscionable.  Mohamed, 848 F.3d at 1210-12; Valley Health, 2023 WL 1453227, at *2.

Finally, if simple inequality in bargaining power rendered an agreement procedurally unconscionable, then every commercial transaction would be procedurally unconscionable.  The law cannot countenance such an outcome.  Here, despite an inequality in bargaining power, Plaintiffs had a meaningful opportunity to review the Contract and opt-out of the arbitration agreement.

For these reasons, the Court finds that the delegation provision is not procedurally unconscionable.  Because the Court finds that the delegation provision is not procedurally unconscionable, the Court need not address substantive unconscionability.  See U.S. Home Corp. v. Medina, No. 64604, No. 66203, 2018 WL 2272804, at *4 (Nev. 2018) ("[A]s we conclude there is no procedural unconscionability . . . , we need not address substantive unconscionability as both are needed to render a provision unenforceable."); Burch, 49 P.3d at 650 ("Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause as unconscionable.") (citations omitted).

### 2.   Substantive unconscionability

Regardless, the Court finds that any alleged substantive unconscionability does not render the delegation clause invalid.

"Substantive unconscionability concerns the contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy." Tough Turtle, 537 P.3d at 885-86 (quotation marks and citation omitted).

15

Plaintiffs argue that the "delegation provision" is substantively unconscionable because "the Contract separately reserves to [Eaglemark] the right to repossess collateral without judicial process . . . , pursue deficiency judgments, exercise self-help remedies, and access the consumer's Connected Vehicle GPS information for collection purposes." Resp. at 7.  In other words, Plaintiffs argue that the Contract itself is one-sided because it requires arbitration of all of the consumer's likely claims while "[t]he lender's most important remedies operate outside arbitration entirely[.]" Id.  In Rent-A-Center, the Supreme Court rejected a virtually identical argument because it "clearly did not go to the validity of the delegation provision."  561 U.S. at 73.  And in any event, the Arbitration Agreement reserves the right of both Parties to "seek limited provisional remedies from a court . . . ."  Contract ¶ 26.  The fact that Defendants may seek an order of replevin from a court[5] and retain the right to repossess the vehicle without resorting to the judicial process does not render the delegation provision unreasonably favorable to Eaglemark.  Cf. Plazza v. Airbnb, Inc., 289 F. Supp. 3d 537, 558-59 (S.D.N.Y. 2018) (finding that arbitration agreement between employer and employee that permitted both parties to seek relief in court that, in reality, was more likely to be brought by the employer was not substantively unconscionable under California law).

Next, Plaintiffs argue that the delegation provision is substantively unconscionable because it extends to "any of [Eaglemark's] successors, assigns, parents, subsidiaries, or affiliates[.]"  Resp. at 7 (citing Contract ¶ 26).  However, Plaintiffs cite no authority—and the Court has found none— holding that a delegation provision is substantively unconscionable because the arbitration agreement to which it applies may be enforced by a party's successor, assign, parent, subsidiary,

---

[5]       According to Defendants, "state courts in New Mexico retain jurisdiction over the replevin of vehicles by statute, meaning that claim could not be arbitrated. Defendants cannot arbitrate a replevin order without implicating the state court in New Mexico."  Reply at 10.  While this may be true, they cite no authority supporting this assertion.

or affiliate. The Court finds that such a provision does not render the delegation provision unreasonably favorable to Eaglemark. See Perez v. PeopleReady, Inc., Case No. 25-cv-04610-AMO, 2026 WL 638555, at *5 (N.D. Cal. Mar. 6, 2026) (rejecting the plaintiff's argument that an arbitration agreement was substantively unconscionable because it extended to contract signatory's "parent company, subsidiaries, and related companies . . .").

Finally, Plaintiffs argue that the delegation provision is substantively unconscionable because "[t]he clause waives jury trial rights without separate negotiation, signature, or acknowledgment[,]" and "[j]ury trial waivers are subject to heightened scrutiny regardless of the contractual context." Resp. at 8 (citing Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007)). However, invalidating a delegation provision (or broader arbitration agreement) because it contains a jury trial waiver would be antithetical to the purpose of the FAA, which is to "to overcome judicial resistance to arbitration and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner." Vaden, 556 U.S. at 58 (citation modified). Indeed, "the FAA preempts laws that invalidate an arbitration agreement as unconscionable for . . . not affording a right to jury trial." U.S. Home Corp., 415 P.3d at 40 (citing Concepcion, 563 U.S. at 341-42). Plaintiffs cite no authority—and the Court has found none—holding that a jury trial waiver renders a delegation provision substantively unconscionable under Nevada law. Indeed, "[n]early all arbitration agreements forgo some procedural protections, such as the right to a trial . . . ." U.S. Home Corp., 415 P.3d at 42. The Court finds that such a provision does not render the delegation provision unreasonably favorable to Eaglemark.

For these reasons, the Court finds that any alleged substantive unconscionability does not render the delegation clause invalid.

**c.      Plaintiffs agreed to arbitrate the arbitrability of their statutory claims**

Finally, Plaintiffs argue that the Arbitration Agreement does not reach their claims under the FDCPA (Counts One and Two) and New Mexico Unfair Practices Act (Count Three).[6]  Resp. at 11.

However, because the Court has found that the Parties clearly and unmistakably delegated issues of arbitrability to the arbitrator, the Court does not reach this issue.  Uber Techs., 517 P.3d at 907 (holding that "where an arbitration agreement delegates the threshold question of arbitrability to the arbitrator, the district court must refer the case to arbitration" and "[b]ecause the arbitration agreement here is governed by the FAA and included a delegation clause that clearly and unmistakably delegated the threshold question of arbitrability to the arbitrator, the district court erred by denying the motion to compel arbitration on the basis that the arbitration agreement did not cover the dispute"); Belnap, 844 F.3d at 1280-81 (holding that because there was clear and unmistakable evidence that the parties agreed that an arbitrator should decide all questions of arbitrability, "the district court should have stayed the litigation and compelled all claims against SLRMC to arbitration so that an arbitrator could decide their arbitrability in the first instance").

**IV.     Conclusion**

Therefore, it is **HEREBY ORDERED** that:

1.       Defendants' Motion to Compel Arbitration, ECF Nos. 16, 16-2, is **GRANTED**;

2.       This matter is **STAYED** pending the completion of the arbitration proceedings; and

---

[6]       Plaintiffs acknowledge that Count Four (breach of contract) falls within the scope of the Arbitration Agreement.  Resp. at 11.

3.      Within **THIRTY DAYS** of the completion of the arbitration proceedings, the

Parties shall file a joint motion to lift the stay and close the case, or other appropriate

motion.


**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE